IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DWAYNE E. BANKS, ) | |
|     Plaintiff, ) | |
| vs. ) | No. 3:08-CV-0474-K-BH |
| ) | |
| D. GAMMON, et al., ) | |
|     Defendants. ) | Pretrial Management |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Officer D. Gammon's 12(b)(6) Motion to Dismiss; and Alternative 12(e) Motion for More Definite Statement* ("Def. Mot."), filed October 5, 2009, (doc. 31). Based on the relevant filings and applicable law, both motions should be **DENIED.**

**I. BACKGROUND**

Plaintiff filed this action under 42 U.S.C. § 1983 in March 2008, while he was a pretrial detainee in the Dallas County Jail. (*See* Compl. (doc. 1) at 1; Am. Compl. (doc. 5) at 1.)[1] During preliminary screening, the Court dismissed two defendants and stayed the action against the two remaining defendants pending resolution of state criminal charges filed against the plaintiff for aggravated assault of a public servant, evading arrest and failure to identify. (*See* Orders of June 9, 2008, docs. 11-12; MJQ Ans. 5.) After Plaintiff moved to reopen the action in June 2009 because the criminal charges against him had been dismissed, the motion was granted, and service was

---

[1] Plaintiff filed an amended complaint on April 24, 2008. (*See* Doc. 5.) Although it supersedes the original complaint, *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam), courts may in "an abundance of caution" consider a prior *pro se* pleadings, *see Ross v. Hutchins Police Dep't*, No. 3:09-CV-0168-M, 2009 WL 1514364, at *2 (N.D. Tex. May 29, 2009) (accepting recommendation of Mag. J.), and his original complaint is therefore also considered herein. In addition, the Court sent Plaintiff a Magistrate Judge's Questionnaire ("MJQ") to clarify his claims. His answers constitute an amendment to the filed complaint and are also considered. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

ordered. (*See* Order of June 8, 2009, doc. 15.) Defendant Dallas County Sheriff Lupe Valdez subsequently moved to dismiss the action against her, and a final judgment was entered in her favor on October 2009. (*See* Final Judgment, doc. 35.)

Plaintiff's claims against the sole remaining defendant, D. Gammon ("Gammon"), arise out of alleged excessive force during a traffic stop. (*See* Am. Compl. at 3-4; MJQ Ans. 2, 4.) Plaintiff claims that while at an intersection with a four-way stop, he motioned for a patrol car to his right to proceed. (MJQ Ans. 4.) After the patrol car "progressed through" the intersection, Plaintiff proceeded; the patrol car then turned around and pulled him over for failing to stop at a stop sign. (*Id.*) He adamantly stated to the officer that the traffic stop was illegal, (*id.*), and the discussion became heated, (MJQ Ans. 2; Compl. at 1). Plaintiff did not put his car into the parking gear when he was pulled over, and the officer (Gammon) unsuccessfully tried to put the car in park. (*See* MJQ Ans. 4.) Gammon opened the door and verbally assaulted Plaintiff while pulling out a can of mace and stepped into the 'V' that was created" next to Plaintiff. (*Id.*; Compl. at 1.) Plaintiff ducked, the car went forward, and when he straightened up, Gammon shot him in the head at close range. (*See* MJQ Ans. 4.) Plaintiff concedes that he "did try to evade officer because of prior knowledge of 'insane' traffic stop", but he claims that he did nothing to provoke the use of deadly force. (*See id.*) He also denies that Gammon was "dragged by the car". (*See* MJQ Ans. 7.) Plaintiff claims that the bullet entered his head above his left ear, "clipped a small portion of brain, went above left eye, through the nasal cavity, below right eye and exited upper right cheek," resulting in significant injuries (*See* MJQ Ans. 3.) He seeks monetary damages for these injuries. (Am. Compl. at 4.)

On October 5, 2009, Gammon moved to dismiss all claims asserted against him based upon qualified immunity, and alternatively, for a more definite statement. (*See* Def. Mot. at 2-3; Br. Supp.

at 3-10.) Plaintiff filed a document that has been construed as a response (*see* Pl.'s Mot. Definitive Statement and Nonsupport of Dismissal, doc. 40), Gammon filed a reply (*see* Reply, doc. 42), and the issues are now ripe for determination.

## II.  MOTION TO DISMISS

Gammon moves to dismiss Plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) on grounds of qualified immunity.  (*See* Def. Mot. at 2-3; Br. Supp. at 3-10.)

Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted. *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  It is well-established that "*pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). However, regardless of whether the plaintiff is proceeding *pro se* or is represented by counsel, pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative

3

level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 129 S. Ct. at 1949 (citations omitted).

## A. **Qualified Immunity**

Gammon argues that the plaintiff has failed to state a § 1983 claim upon which relief can be granted against him because he is protected by qualified immunity. (Def. Mot. at 2.)

Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). It "afford[s] redress for violations of federal statutes, as well as of constitutional norms." *Id.* To state a claim under § 1983, a plaintiff must allege facts that show (1) he has been deprived of a right secured by the Constitution and the laws of the United States and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A governmental employee who is sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil

damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved at the earliest possible stage in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand.[2] *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'. . . is now advisory."). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of*

---

[2] Because current law applies to the first prong but "the law at the time of the incident" applies to the second prong, two different tests may be applicable in a given case. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

*Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam). To satisfy that burden on a motion to dismiss, the plaintiff must claim that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable. *Club Retro, LLC*, 568 F.3d at 194; *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).

**B. <u>Excessive Force</u>**

    **1. Pleading Burden**

Gammon first argues that Plaintiff's excessive force claim should be dismissed because the complaint fails to plead sufficient facts to overcome his qualified immunity defense, citing *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985); *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986); and *Brown v. Glossip*, 878 F.2d 871, 872 (5th Cir. 1989). (*See* Br. Supp. at 4-5.)

Since those cases were decided, the Supreme Court has clearly held that plaintiffs are not required to anticipate a qualified immunity defense by providing greater specificity in their initial pleadings. *Crawford-El v. Britton*, 523 U.S. 574, 595 (1998). The Fifth Circuit has also since held that a plaintiff is not required to "fully anticipate the defense in his complaint at the risk of dismissal under Rule 12." *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995) (en banc); *accord Todd v. Hawk*, 72 F.3d 443, 446 (5th Cir. 1995) (per curiam). It is well-settled that the burden does not shift to the plaintiff to demonstrate the inapplicability of the defense until the defendant has asserted qualified immunity as a defense. *See Club Retro, L.L.C.*, 568 F.3d at 194; *McClendon*, 305 F.3d at 323.

Gammon's motion to dismiss Plaintiff's complaint on this ground should be denied.

    **2. Constitutional Violation**

Gammon next moves to dismiss on grounds that Plaintiff has not sufficiently asserted a

violation of a constitutional right.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989).[3] To state a Fourth Amendment excessive force claim under § 1983, a plaintiff must allege "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Cf. id.* (addressing showing necessary to prevail on claim); *accord Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (same). *See also Woods v. Carroll County, Miss.*, No. 4:07-CV-94-SA-DAS, 2009 WL 1619955, at *4 (N.D. Miss. June 9, 2009) (setting out same requirement in motion to dismiss context).

Here, Plaintiff has alleged that Gammon shot him during a stop for a minor traffic violation, and that he suffered injuries as a result. (Am. Compl. at 3-4; MJQ Ans. 2-4.) Whether he has adequately alleged a Fourth Amendment excessive force claim depends on whether he has pled a facially plausible claim that Gammon's use of the firearm was objectively unreasonable under the circumstances. *See Iqbal*, 129 S. Ct. at 1949; *Graham*, 490 U.S. at 395. Objective reasonableness is "a pure question of law" that is considered after determining the relevant facts. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). To gauge the objective reasonableness of the force used, the courts "must

---

[3] A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). A traffic stop qualifies as a seizure. *See*, *e.g.*, *Arizona v. Johnson*, 129 S. Ct. 781, 784 (2009). Additionally, a shooting itself may also qualify as a seizure for purposes of the Fourth Amendment. *See Flores v. City of Palacios*, 381 F.3d 391, 396-97 (5th Cir. 2004).

balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores*, 381 F.3d at 399). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness inquiry must consider "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397.

This balancing test is constrained when the officer uses deadly force. *Flores*, 381 F.3d at 399. "Deadly force" is defined "as force 'carry[ing] with it a substantial risk of causing death or serious bodily harm.'" *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) (citation omitted).[4] Use of deadly force is objectively unreasonable unless necessary to prevent serious harm to the officer or others. *See Scott*, 550 U.S. at 382 n.9; *Tennessee v. Garner*, 471 U.S. 1, 3 (1985); *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). A belief that deadly force is necessary must be objectively reasonable, and the officer's conduct is viewed without benefit of hindsight in light of the circumstances regardless of underlying intent or motivation. *Manis*, 585 F.3d at 843.

Here, Plaintiff's pleadings concede that he argued with Gammon during the stop, that his car was not in the parking gear, that Gammon tried to put the car in park, that Gammon opened the door, that the car went forward, and that Gammon was standing next to Plaintiff when the car went forward. The Fifth Circuit has expressly rejected the argument that a moving vehicle always poses a threat regardless of other circumstances. *See Lytle v. Bexar County, Tex.*, 560 F.3d 404, 412 (5th

---

[4] "[W]hether a particular use of force is 'deadly force' is a question of fact, not one of law." *Flores*, 381 F.3d at 399.

8

Cir. 2009). As in all cases involving a moving vehicle, the objective reasonableness of a decision to use deadly force depends on whether the vehicle posed a threat of harm in the circumstances faced by the officer. *Id.* Moreover, the mere act of fleeing does not always make it objectively reasonable to discharge a firearm even when the fleeing vehicle posed a significant threat of harm. *See id.* (shooting "at the back of a vehicle three or four houses down the block of a residential area"), 414 ("*Scott* did not declare open season on suspects fleeing in motor vehicles"); 415-16 (recognizing cases from other jurisdictions that "have found police officers' shooting of fleeing motorists to be unreasonable-or at least potentially so, for the purposes of qualified immunity appeals-where the driver posed a lesser risk of harm to others"). Numerous facts are relevant to the reasonableness determination, and dismissal is improper upon a "meager record" that requires several inferences and factual assumptions favorable to the plaintiff. *Id.* at 417.

The only basis for a reasonable belief that Plaintiff posed a threat of harm to Gammon or others alleged in the complaint is the forward movement of the car while Gammon was in the door area. Looking only at the pleadings and accepting Plaintiff's factual allegations as true for purposes of this motion to dismiss, as it must, the Court finds that Plaintiff has pled a facially plausible claim that the use of deadly force was excessive and unreasonable under the circumstances faced by Gammon. He has alleged sufficient facts to state a plausible Fourth Amendment excessive force claim, and the motion to dismiss on this ground should be denied.

### 3. Objective Reasonableness in Light of Clearly Established Law

Gammon lastly moves to dismiss on grounds that his actions were objectively reasonable in light of clearly established law.

To show the inapplicability of Gammon's asserted qualified immunity defense, Plaintiff must

9

claim that the violation of his Fourth Amendment rights was objectively unreasonable given the clearly established law at the time of the alleged constitutional violation. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). This is an "entirely separate inquiry" from the reasonableness determination inherent in considering whether the Plaintiff has claimed a Fourth Amendment excessive force claim. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 n.1 (5th Cir. 2009). The focus is "not on the general standard – when may an officer use deadly force against a suspect? – but on the specific circumstances of the incident – could an officer have reasonably interpreted the law to conclude that the perceived threat posed by the suspect was sufficient to justify deadly force?" *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004)).

For purposes of qualified immunity, "clearly established" means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Being clearly established in an abstract sense generally gives insufficient notice – in most cases, the law should be clear in a more particularized sense related to the specific context in which the officer is acting. *Brosseau*, 543 U.S. at 198-99 (discussing both scenarios); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (discussing both scenarios). Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

At the time of the September 2007 shooting in this case, it was clearly established that an

arresting officer could "use some degree of physical coercion or threat" to make the arrest but "the permissible degree of force depend[ed] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (footnotes and internal quotation marks omitted) (relying on *Saucier v. Katz*, 533 U.S. 194, 208 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009); *Graham v. Connor*, 490 U.S. 386, 395 (1989)). It was also clearly established that using deadly force was only justified by a reasonable belief that the officer or the public was in imminent danger. *See Flores*, 381 F.3d at 401.

When qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). Here, Plaintiff alleges that Gammon shot him in the head for no legitimate reason during a traffic stop, and he provides numerous facts to support his claim that Gammon's actions objectively unreasonable. (*See* MJQ Ans. 2, 4.) Plaintiff's pleadings sufficiently allege that Gammon's use of deadly force was objectively unreasonable in light of clearly established law so as to overcome the asserted qualified immunity defense at this stage of the litigation.

Gammon cites several cases for the proposition that he acted objectively reasonably given the clearly established law when he used deadly force against Plaintiff who was fleeing in a vehicle. (Br. Supp. at 5-6 (citing *Brosseau v. Haugen*, 543 U.S. 194 (2004); *Reese v. Anderson*, 926 F.2d 494, 497 (5th Cir. 1991); *Stroik v. Ponseti*, 35 F.3d 155, 159 (5th Cir. 1994); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992); *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993)). However, these

cases are distinguishable[5] and do not support the broad proposition for which they are cited. As recognized in *Brosseau*, the issue of excessive force is greatly dependent on the facts of the particular case. 543 U.S. at 201. Use of deadly force is not justified in all cases in which a person was or had been fleeing in a vehicle. *See id.* at 200-01 (citing three cases involving vehicles, two of which found no Fourth Amendment violation and one which "found summary judgment inappropriate on a Fourth Amendment claim involving a fleeing suspect"); *Lytle*, 560 F.3d at 412.

In conclusion, Plaintiff has adequately alleged a violation of the Fourth Amendment and that Gammon's use of deadly force was objectively unreasonable under the law in September 2007, so Defendant's motion to dismiss should be **DENIED** in its entirety.

### III. MOTION FOR A MORE DEFINITE STATEMENT

Defendant requests, in the alternative, that Plaintiff be required to file a more definite statement under Fed. R. Civ. P. 12(e) as to any claims against him, thereby allowing him to more appropriately respond to such claims. (Def. Mot. at 2, 4.)

Rule 12(e) allows a party to "move for a more definite statement of a pleading to which a responsive pleading is allowed" if it is "so vague or ambiguous that the party cannot reasonably

---

[5] The officer in *Brosseau* confronted "a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight" who "'had proven he would do almost anything to avoid capture'" and posed a "major threat" to others. 543 U.S. at 200 (quoting *Freland*, 954 F.2d at 347). *Freland* involved a high-speed chase and two confrontations – one where the suspect repeatedly swerved directly toward the police vehicle and the second where the suspect rammed a police vehicle and smashed a fence and gate as he tried to escape. 954 F.2d at 344. In *Reese*, the officer faced a robbery suspect who was sitting in a vehicle that "had just come to an abrupt stop after a high speed chase during which apparently – stolen objects had been tossed from the car" and who repeatedly reached down below the officer's sight line in defiance of orders to raise his hands and the officer could reasonably believe that the suspect "had retrieved gun and was about to shoot." 926 F.2d at 500-01. In *Stroik*, the officer faced robbery suspects whose "van had just come to an abrupt stop after a high speed chase during which the van had struck a pedestrian", one suspect was fleeing on foot while two others exited the van; and it was undisputed that as the officer "came around the rear of the van" one suspect "was pointing a gun at him." 35 F.3d at 159. In *Cole,* a confrontation occurred between officers and the driver of an eighteen-wheeled tractor-trailer who had fled at speeds in excess of ninety miles per hour, passed traffic on both shoulders of the interstate highway, repeatedly attempted to ram police vehicles, drove more than one hundred vehicles off the road, ran through several roadblocks, and continued to drive even after multiple tires of the truck had been shot. 993 F.2d at 1330-31.


prepare a response." Whether to grant a motion for more definite statement is within the Court's sound discretion. *Crawford-El v. Britton*, 523 U.S. 574, 597-98 (1998); *Travelers Indem. Co. of Conn. v. Presbyterian Healthcare Res.*, 313 F. Supp. 2d 648, 653-54 (N.D. Tex. 2004). In general, such motions are "disfavored" and only used to remedy "an unintelligible pleading" rather than to provide additional detail. *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 639 (S.D. Tex. 2001) (quoting *Frazier v. Se. Pa. Transp. Auth.*, 868 F. Supp. 757, 763 (E.D. Pa. 1994)); *accord Travelers Indem. Co. of Conn.*, 313 F. Supp. 2d at 653-54. "In view of the great liberality of Fed. R. Civ. P. 8, permitting notice pleading, it is clearly the policy of the Rules that Rule 12(e) should not be used to frustrate this policy by lightly requiring a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959). Rule 8(a) requires only that a complaint provide a short and plain statement of the claim showing that the plaintiff is entitled to relief. Additionally, to comport with Rule 8(a), the complaint must simply either: "(1) provide notice of the circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Gen. Star Indem. Co. v. Vesta Fire Ins. Co.*, 173 F.3d 946, 950 (5th Cir. 1999).

An asserted qualified immunity defense does not affect the pleading requirements of Rule 8 or the applicability of Rule 12(e). *See Crawford-El*, 523 U.S. at 597-98. The Court may grant a motion for more definite statement when the "complaint is ambiguous or does not contain sufficient information to allow a responsive pleading to be framed." *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999); *accord Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can

13

move for a more definite statement under Rule 12(e) before responding."). However, the courts should deny such a motion when the defendant "is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading." *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006); *accord Mitchell*, 269 F.2d at 132 (recognizing that a Rule 12(e) motion is not a substitute for discovery or other means to obtain "facts in preparation for trial").

Plaintiff's excessive force claim has withstood a motion to dismiss and is neither so unintelligible nor so vague that Defendant should be unable to respond. Accordingly, the motion for a more definite statement should be **DENIED**.

## IV.  CONCLUSION

*Officer D. Gammon's 12(b)(6) Motion to Dismiss; and Alternative 12(e) Motion for More Definite Statement*, filed October 5, 2009, (doc. 31), should be denied.

**SO RECOMMENDED on this 26th day of January, 2010.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

   A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

<div style="text-align: right;">

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

</div>