**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| DWAYNE E. BANKS,           ) | |
|           Plaintiff,       ) | |
| vs.                        ) | No. 3:08-CV-0474-K-BH |
|                            ) | |
| D. GAMMON, et al.,         ) | |
|           Defendants.      ) | Pretrial Management |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS**

Pursuant to Special Order No. 3-251, this case has been referred for pretrial management, including the determination of non-dispositive motions and issuance of findings of fact and recommendations on dispositive motions. Before the Court is *Officer D. Gammon's Motion for Summary Judgment and No-Evidence Motion for Summary Judgment*, filed March 26, 2010, (doc. 55). Based on the relevant filings and applicable law, the motion should be **GRANTED.**

**I. BACKGROUND**

Plaintiff sues defendant D. Gammon ("Gammon" or "Defendant") under 42 U.S.C. § 1983 for excessive force following a traffic stop.

While on duty as a patrol officer on September 16, 2007, Defendant stopped Plaintiff for allegedly failing to obey a stop sign. (*See* Am. Compl. at 4; Answers to Magistrate Judge's Questionnaire ("MJQ") at 2-4; Def.'s App. ("App.") at 15 (Aff. Gammon).)[1] Defendant followed Plaintiff for two blocks, "bump[ing] his siren several times before turning the siren on constant." (App. at 15.) Plaintiff stopped in the roadway until moving to the side of the road after Defendant prompted him several times over a public address system. (*Id.*) Plaintiff gave the name "Christopher James

---

[1] The verified answers to the questionnaire constitute an amendment to the filed complaint. *See Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994). Because the amended complaint and answers are verified under penalty of perjury, they may serve as competent summary judgment evidence "to the extent that [they] comport[] with the requirements of Fed. R. Civ. P. 56(e)." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Barnes v. Johnson*, 204 F. App'x 377, 378 (5th Cir. 2006) (per curiam).

Banks" but provided no identification. (*Id.*) Defendant cited Plaintiff for failing to stop and failing to display a driver's license. (*Id.* at 16.) Plaintiff appeared to sign the citation with a different name before crossing it out and signing "Christopher Banks". (*Id.*) That prompted Defendant to ask Plaintiff whether he had any tattoos, and Plaintiff denied having any. (*Id.* at 16; *see also* App. at 18 (Aff. Officer Haber).) A check for identifiers indicated that Christopher Banks had a tattoo on his chest and left arm. (*Id.* at 16.) With that information, Defendant again asked Plaintiff whether he had any tattoos, and Plaintiff again denied having any. (*Id.*) Defendant suspected that Plaintiff had given a false name. (*Id.* at 16, 19.)

As discussions between the parties escalated, Defendant opened Plaintiff's door, pulled out a can of mace or pepper spray, and stepped into the area between the door and frame. (MJQ Ans. 2, 4; App. at 16, 19.) Another officer who had arrived, Officer Haber, heard Plaintiff "rev the engine". (App. at 19.) Anticipating a chase, he stepped back and saw Plaintiff "peel[] out with Officer Gammon" along side the vehicle and the vehicle "angled left, towards Officer Gammon" as it went forward. (*Id.*; *see also* MJQ Ans. 4.) At this point, Defendant was "partly inside of" the vehicle, and it appeared to Officer Haber that Defendant was "entangled in the car." (App. at 16, 19.) Defendant twice yelled for Plaintiff to stop the vehicle as it moved into the middle of the street. (*Id.* at 19.) When Plaintiff failed to comply, Defendant fired two shots at close range. (MJQ Ans. 2; App. at 16, 19.) One struck Plaintiff in the head and resulted in significant injuries. (MJQ Ans. 3-4.) Shortly after that, Defendant disengaged from the vehicle about thirty feet from where it had started to move. (App. at 16, 19.) The vehicle continued another hundred feet or so until it struck a tree with enough force to deploy the air bags. (App. at 39 (crime scene report).) Both officers thought Plaintiff was going to run over Defendant. (App. at 16, 19.) Plaintiff concedes that he "did

try to evade officer because of prior knowledge of 'insane' traffic stop", but maintains that he did nothing to provoke the use of deadly force. (MJQ Ans. 4.)

On March 26, 2010, Defendant moved for summary judgment based upon qualified immunity and the absence of a constitutional violation. (*See* Br. Supp. at 5.) As part of his motion, he contends that there is no evidence to show that he used excessive force against Plaintiff. (*See id.* at 27.) Plaintiff has filed a response (*see* Resp. Mot. Summ. J., doc. 56), Defendant filed a reply (*see* Reply, doc. 59), and the issues are now ripe for determination.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id.* at 255, neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

### III.  QUALIFIED IMMUNITY

Defendant claims that he did not violate Plaintiff's constitutional rights, and he is protected by qualified immunity. (*See* Br. Supp. at 5.)

A governmental employee who is sued under 42 U.S.C. § 1983 may assert the affirmative

4

defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Because an official is entitled to immunity from suit, not merely from liability, immunity questions should be resolved as early as possible in the litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

In deciding whether a defendant is entitled to qualified immunity, courts conduct a two-prong inquiry. The first prong entails consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). Under the second prong, courts determine whether the violated constitutional right was clearly established within the specific context of the case. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. It is within the discretion of the court to decide which of the two prongs to address first in light of the circumstances particular to the case at hand.[2] *Pearson*, 129 S. Ct. at 818; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009) ("*Saucier's* rigid 'order of battle'. . . is now advisory."). If the court answers both the constitutional violation and clearly established questions in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410.

---

[2] Because current law applies to the first prong but "the law at the time of the incident" applies to the second prong, two different tests may be applicable in a given case. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

The plaintiff has the burden to show the inapplicability of an asserted qualified immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc). To satisfy that burden on a motion for summary judgment, the plaintiff must produce evidence showing that a defendant violated the plaintiff's constitutional rights and that the violation was objectively unreasonable. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 407 (5th Cir. 2007). Even *pro se* litigants must adhere to the requirement that they oppose summary judgment in accordance with Fed. R. Civ. P. 56(e). *See Gordon v. Watson*, 622 F.2d 120, 122-23 (5th Cir. 1980).

## A. Excessive Force

Defendant moves for summary judgment on grounds that Plaintiff has not shown a violation of a constitutional right.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A seizure occurs when an officer "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968). The Supreme Court has held that "*all* claims that law enforcement officers have used excessive force-deadly or not-in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."[3] *Graham v. Connor*, 490 U.S. 386, 395 (1989). To succeed on a Fourth Amendment excessive force claim under § 1983, a plaintiff must show "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Id.*; *accord Ontiveros v. City*

---

[3] A shooting itself may qualify as a seizure for purposes of the Fourth Amendment. *See Flores v. City of Palacios*, 381 F.3d 391, 396-97 (5th Cir. 2004).

*of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009).

Here, the undisputed evidence shows that Defendant shot Plaintiff following a stop for a minor traffic violation, and that Plaintiff suffered injuries as a result. Whether Plaintiff has shown a Fourth Amendment excessive force claim depends on whether he has shown that Defendant's use of the firearm was objectively unreasonable under the circumstances. *Graham*, 490 U.S. at 395. Objective reasonableness is "a pure question of law" that is considered after determining the relevant facts. *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007). To gauge the objective reasonableness of the force used, the courts "must balance the amount of force used against the need for force." *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (quoting *Flores*, 381 F.3d at 399). Proper application of this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. The reasonableness inquiry must consider "the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 397.

This balancing test is constrained when the officer uses deadly force. *Flores*, 381 F.3d at 399. "Deadly force" is defined "as force 'carry[ing] with it a substantial risk of causing death or serious bodily harm.'" *Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) (citation omitted).[4] Use of deadly force is objectively unreasonable unless necessary to prevent serious harm to the officer or others. *See Scott*, 550 U.S. at 382 n.9; *Tennessee v. Garner*, 471 U.S. 1, 3 (1985);

---

[4] "[W]hether a particular use of force is 'deadly force' is a question of fact, not one of law." *Flores*, 381 F.3d at 399.

7

*Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009).  A belief that deadly force is necessary must be objectively reasonable, and the officer's conduct is viewed without benefit of hindsight in light of the circumstances regardless of underlying intent or motivation.  *Manis*, 585 F.3d at 843.

Here, it is undisputed that Plaintiff argued with Defendant during a traffic stop and that Defendant suspected that Plaintiff gave him a false name.  As the events escalated, Defendant opened the door to Plaintiff's vehicle and stepped into the open door area with pepper spray or mace in hand, and was partially in the vehicle when Plaintiff tried to flee.  From Defendant's perspective, when Plaintiff rapidly accelerated to flee, he committed an aggravated felony against a known police officer while actively evading detention and he placed Defendant in sufficient danger to justify the use of deadly force to end the threat.  Defendant had to make a split-second decision under tense, uncertain, and rapidly evolving circumstances.  While in the zone of danger created by Plaintiff, Defendant reasonably believed that deadly force was necessary to prevent serious harm to him.  Under the totality of the circumstances, the use of deadly force was objectively reasonable and therefore not excessive.  Consequently, Plaintiff has failed to establish the existence of an essential element of his case.

Because there is no issue of material fact that the force used was objectively reasonable under the circumstances, summary judgment should be granted for Defendant.

**B. Objective Reasonableness in Light of Clearly Established Law**

Defendant also moves to dismiss on grounds that his actions were objectively reasonable in light of clearly established law.

To show the inapplicability of Defendant's asserted qualified immunity defense, Plaintiff must claim that the violation of his Fourth Amendment rights was objectively unreasonable given

the clearly established law at the time of the alleged constitutional violation. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). This is an "entirely separate inquiry" from the reasonableness determination inherent in considering whether the Plaintiff has claimed a Fourth Amendment excessive force claim. *Ontiveros v. City of Rosenberg*, 564 F.3d 379, 383 n.1 (5th Cir. 2009). The focus is "not on the general standard – when may an officer use deadly force against a suspect? – but on the specific circumstances of the incident – could an officer have reasonably interpreted the law to conclude that the perceived threat posed by the suspect was sufficient to justify deadly force?" *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004)).

For purposes of qualified immunity, "clearly established" means that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Being clearly established in an abstract sense generally gives insufficient notice – in most cases, the law should be clear in a more particularized sense related to the specific context in which the officer is acting. *Brosseau*, 543 U.S. at 198-99 (discussing both scenarios); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) (recognizing that when the constitutional violation is obvious, a materially similar case is unnecessary to find the law clearly established); *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (discussing both scenarios). Because the primary concern is fair notice to the officer, the law can be clearly established in some cases "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope*, 536 U.S. at 740 (citation omitted).

At the time of the September 2007 shooting in this case, it was clearly established that an arresting officer could "use some degree of physical coercion or threat" to make the arrest but "the

permissible degree of force depend[ed] on the severity of the crime at issue, whether the suspect posed a threat to the officer's safety, and whether the suspect was resisting arrest or attempting to flee." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (footnotes and internal quotation marks omitted) (relying on *Saucier v. Katz*, 533 U.S. 194, 208 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009); *Graham v. Connor*, 490 U.S. 386, 395 (1989)). It was also clearly established that using deadly force was only justified by a reasonable belief that the officer or the public was in imminent danger. *See Flores*, 381 F.3d at 401. When qualified immunity is raised in a motion for summary judgment, it is the defendant's conduct as shown by the summary judgment evidence that is examined for objective legal reasonableness. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

Here, the uncontested summary judgment evidence shows that Defendant shot Plaintiff as he rapidly accelerated his vehicle while Defendant was partially in the vehicle. Plaintiff's actions placed Defendant in imminent danger and could reasonably be perceived as an aggravated felony committed against Defendant. Accordingly, even if the Court found that Defendant used excessive force, he would be protected by qualified immunity because under the facts, he could have reasonably interpreted the law as it existed in 2007 to conclude that the perceived threat from Plaintiff was sufficient to justify use of deadly force. The summary judgment evidence does not show Defendant to be plainly incompetent or to have knowingly violated the law.

Because Defendant acted objectively reasonably in light of clearly established law in 2007, he is protected by qualified immunity under the facts of this case, and his motion for summary judgment should be granted even if he used excessive force against Plaintiff.

## IV. CONCLUSION

*Officer D. Gammon's Motion for Summary Judgment and No-Evidence Motion for Summary Judgment*, filed March 26, 2010, (doc. 55), should be granted.

**SO RECOMMENDED on this 10th day of June, 2010.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE